IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, et al., | : <br> : <br> : <br> : CIVIL ACTION <br> Plaintiffs, : <br> : <br> v. : No. 08-5398 <br> : <br> CALN TOWNSHIP, et al., : <br> : <br> Defendants. : |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                   **MARCH 12, 2009**

Presently before the Court is the Motion of All Defendants to Dismiss Plaintiffs' Complaint and Deny Plaintiffs' Motion for Declaratory and Injunctive Relief Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Motion is denied.

**I.     FACTS**

Plaintiff National Railroad Passenger Corporation ("Amtrak") was established by the Rail Passenger Service Act, 49 U.S.C. § 24101, in 1971. Daniel Karczeski ("Karczeski") is Amtrak's Deputy Division Engineer and is also a Plaintiff in this litigation. Caln Township ("the Township") is a township organized and existing under the laws of the Commonwealth of Pennsylvania, located at 253 Municipal Drive, Thorndale, Pennsylvania 19372.[1] A portion of Amtrak's railway runs through Caln Township.

---

[1] Several Township employees, including Andrew F. Reczek, Jill Kelly Hammond, Jim Mayrides, Jim Kruse, Joshua Young, and William Chambers are also named as Defendants.

On August 13, 2008, the Township issued two citations to Karczeski for Amtrak's alleged failure to comply with local ordinance § 302.4, a Township weed control ordinance requiring that plant growth be maintained at eight inches or less. On August 26, 2008, the Township again cited Karczeski for a second alleged violation of this same ordinance on another portion of Amtrak's property. A Pennsylvania magisterial district judge issued summonses for the citations on August 14, 2008 and August 28, 2008. Karczeski pled not guilty to the citations and posted collateral for the citations in the amount of $352.00. Thereafter, the magistrate judge scheduled a hearing on the matter for September 30, 2008.

On September 12, 2008, counsel for Amtrak sent a letter to the Township asserting that Amtrak was federally exempt from local land use ordinances, such as the Township's weed control ordinance. The letter also referenced similar citations that the Township had issued against Amtrak two years prior, in 2006, and requested that the Township withdraw the current citations, as it had done with the 2006 citations.

On September 24, 2008, Deputy General Counsel and Solicitor General for Amtrak contacted the Township's Solicitor, asking that the Township take whatever steps possible to get the citations against Karczeski withdrawn. However, before the citations were withdrawn, the magistrate judge held a hearing on the matter, as scheduled, on September 30, 2008, wherein Karczeski was not present. As a result, on October 1, 2008, the magistrate judge entered an Order Imposing Sentence of a fine of $12.32, and on October 2, 2008, the magistrate judge issued a Notice of Impending Arrest to Karczeski, directing that if Karczeski did not either appear before the court or remit the $12.32 to the Township, a warrant would be issued for his arrest. A bench warrant was ultimately issued for Karczecki's arrest, and Karczecki received

notice of it on November 7, 2008.

On November 10, 2008, counsel for Amtrak contacted counsel for the Township and demanded that the Township withdraw the citations and the bench warrant for Karczecki's arrest. On November 11, 2008, counsel for the Township responded to Amtrak's counsel, stating that the Township did not have the authority to withdraw the arrest warrant issued for Karczecki, but offered to "informally look into" the reason for the arrest warrant. Counsel for the Township later agreed, via email, to withdraw the citations and to ask the magistrate judge to rescind the arrest warrant. According to the Township, it further informed counsel for Amtrak that it would be unable to proceed with the withdrawal of the charges until November 14, 2008, due to the unavailability of the magistrate judge. On November 14, 2008, the Township withdrew the citations and asked the magistrate judge to withdraw the arrest warrant issued for Karczecki's arrest, to which he agreed. A Notice of Withdrawal of Charges was issued on November 14, 2008. Amtrak filed its Complaint in this Court on that same day, alleging that the Township's weed ordinance is preempted by several provisions of the Rail Passenger Service Act, 49 U.S.C. § 24101, and 49 C.F.R. § 213.37.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1), when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." Fed. Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. 2000) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)). The district court, when reviewing a motion to dismiss for lack of subject matter jurisdiction, "must accept as true the

allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." Id. (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir. 1987)). The district court is not confined to the face of the pleadings when deciding whether subject matter jurisdiction exists. Id. (citing Armstrong World Indus. v. Adams, 961 F.2d 405, 410, n.10 (3d Cir. 1992)). "In assessing a Rule 12(b)(1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings." Id. (citing Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990)). In the case where the defendant attacks jurisdiction with supporting affidavits, "the plaintiff has the burden of responding to the facts so stated." Id. "A conclusory response or a restatement of the allegations of the complaint is not sufficient." Id. (citing Int'l Ass'n of Machinists & Aerospace Workers v. N.W. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)).

A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley, 355 U.S. at 45-46); see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985).

In considering a motion to dismiss, all allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989) (citations omitted). Exhibits which are attached to the complaint and upon which one or more claims are based can be considered in deciding a motion to dismiss pursuant to Rule 12(b)(6). See Rossman v. Fleet Bank (R.I.) Nat'l Assoc., 280 F.3d 384, 388 n.4

(3d Cir. 2002). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) (citations omitted).

## III. DISCUSSION

### A. Standing and the Case or Controversy Requirement

The Township first argues that Amtrak's Complaint must be dismissed because there is no viable case or controversy, and therefore, Amtrak lacks standing to bring the suit. "Article III limits the jurisdiction of the federal courts to 'cases' and 'controversies.'" Del. Valley Toxics Coal. v. Kurz-Hastings, Inc., 813 F. Supp. 1132, 1138 (E.D. Pa. 1993). For a case or controversy to exist, the matter must be "definite and concrete, touching the legal relations of parties having adverse interests. It must be a real and substantial controversy admitting of special relief through a decree of conclusive character." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). Where no case or controversy exists, the Court will dismiss the case as moot. See Ridley Twp. v. Blanchette, 421 F. Supp. 435, 437 n. 1 (E.D. Pa. 1976).

The case or controversy requirement "is embodied in the doctrine of standing to identify those disputes which are appropriately resolved through the judicial process." Del. Valley Toxics Coal., 813 F. Supp. at 1138. The standing question asks "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant [plaintiff's] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [plaintiff's] behalf." Warth v. Seldin, 422 U.S. 490, 498-99 (1975) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

The United States Supreme Court has identified the following three elements as the

requirements necessary to establish the constitutional minimum of standing for a party invoking federal jurisdiction: (1) the plaintiff must have suffered an "injury in fact"; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The Township argues that, because the citations and arrest warrants have been withdrawn, the case is now moot, and Amtrak lacks standing to pursue the action because it can no longer demonstrate an "injury in fact." See id.  Amtrak argues that, even though the citations and warrants were withdrawn, it has expended $352.00 in fines that have never been refunded, the Township has continually violated Amtrak's federal rights by issuing citations for violations of local laws from which it is exempt under federal law, the Township has continually subjected Amtrak employees to threats of fines and criminal prosecutions, and the Township will continue in this course of action in the future if not enjoined by this Court.  (Pls.' Br. in Opp. 3-5.)

In light of the allegations set forth by Amtrak, we find that it has demonstrated a live case or controversy, and therefore, has standing to bring suit.  Amtrak alleges that it is exempt, under numerous provisions of the Rail Passenger Service Act and 49 C.F.R. § 213.37, from the local ordinance that the Township continues to enforce against it.  The Township asserts that its weed control ordinance is not preempted by any of the federal provisions cited by Amtrak.  This is a real legal controversy between adverse parties, and thus, presents a live case or controversy.  See Dow Chem. v. EPA, 605 F.2d 673, 678 (3d Cir. 1979).  As such, the case will not be dismissed as moot.

With respect to standing, Amtrak's allegations that the Township continues to flout its

federal rights, continues to subject its employees to threats of fines and criminal prosecution, and has failed to refund money collected for violations of local laws to which Amtrak is not subject, establishes that Amtrak has alleged an "injury in fact" for standing purposes. Lujan, 504 U.S. at 560-61.  Furthermore, as the injury was directly caused by the Township, and because this Court can redress the injury through the imposition of injunctive relief, Amtrak has standing to bring suit in this Court.  Id.

### B.  49 U.S.C. § 24301(l)

Amtrak asserts that it is exempt, pursuant to 49 U.S.C. § 24301(l), from the payment of fines associated with the Township's citations.  That statute grants Amtrak immunity from the payment of taxes, fees, and other charges of local entities and reads as follows:

> **(l) Exemption from taxes levied after September 30, 1981.--(1) In general.--** Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak, a rail carrier subsidiary of Amtrak, or on persons traveling in intercity rail passenger transportation or on mail or express transportation provided by Amtrak or such a subsidiary, or on the carriage of such persons, mail, or express, or on the sale of any such transportation, or on the gross receipts derived therefrom after September 30, 1981.  In the case of a tax or fee that Amtrak was required to pay as of September 10, 1982, Amtrak is not exempt from such tax or fee if it was assessed before April 1, 1997.

49 U.S.C. § 24301(l).  Amtrak asserts that it is exempt from paying the fines associated with the Township's citations because the fines constitute a "tax," "fee," or "other charge," from which it is exempt under the statute.  In response to Amtrak's argument, the Township asserts that the statute does not apply to its fines because the fees it imposed were for violations of the weed control ordinance and were not related to the "sale of any such transportation" or "the gross receipts derived therefrom," which it asserts, is necessary for the fines to qualify as a "tax," "fee,"

or "other charge" under the statute.  As such, it argues that the citation does not fit within the meaning of "tax," "fee," or "other charge."

Amtrak argues that the exemption is not limited to fees for "sales" of transportation or from "gross receipts."  In support of this contention, it points to Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 848 F.2d 436 (3d Cir. 1988) ("Amtrak").  There, in deciding whether Amtrak's tax exemption extended to a special assessment for bridge maintenance costs, the Third Circuit determined that the tax exemption granted Amtrak under federal law prohibited the Pennsylvania Utility Commission ("PUC") from shifting responsibility onto Amtrak to pay costs associated with the replacement of the township's bridges crossing Amtrak's right-of-way.  Id. at 440 (finding statutory exemption should be interpreted broadly and extended to assessments for local improvements).  The Third Circuit again affirmed the district court's decision to enjoin PUC from assessing costs and fees against Amtrak for bridge maintenance in Se. Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n., 210 F. Supp. 2d 689, 728-29 (E.D. Pa. 2002), aff'd, Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 342 F.3d 242 (3d Cir. 2003) ("Septa").  Amtrak argues that these cases demonstrate that the exemption is not limited to "sales" or "gross receipts," but instead, extends to maintenance costs and other fees, such as those imposed by the Township.

The Township asserts that, even in light of these cases, the citation still does not constitute a "tax" because imposing a fee upon Amtrak for the reconstruction and maintenance of township roadways and bridges is not the same as imposing a fine for failure to comply with a Township weed ordinance.  The precise definition of "tax" under 49 U.S.C. § 24301(l) has been called into question many times, with the federal courts giving the term broad application,

creating conflicts between state and federal definitions of the term.  See Septa, 210 F. Supp. 2d at 696-702 (discussing cases from Pennsylvania Commonwealth Court defining "tax" more narrowly than federal courts); see also Wheeling & Lake Erie Ry. Co. v. Pa. Pub. Util. Comm'n, 141 F.3d 88, 94-95 (3d Cir. 1998).  While the Third Circuit has not specifically decided whether a citation for violation of a weed control ordinance fit within the meaning of "tax" pursuant to 49 U.S.C. § 24301(l), in light of the broad definition afforded the term in Amtrak and Septa, Amtrak should be given the opportunity to proceed with this claim because, if it is determined that the Township's fines qualify as a "tax," "fee," or "other charge," Amtrak is federally exempt from the payment of such charges.  See Wheeling, 141 F.3d at 95.  This claim, therefore, survives the Motion to Dismiss.

### C.  49 U.S.C. § 24902(j)

Amtrak argues that 49 U.S.C. § 24902(j), a section of the Northeast Corridor Improvement Program ("NCIP"), preempts state and local laws, such as the Township's weed control ordinance.  The statute reads:

> **(j) Applicable procedures.**--No State or local building, zoning, subdivision, or similar or related law, nor any other State or local law from which a project would be exempt if undertaken by the Federal Government or an agency thereof within a Federal enclave wherein Federal jurisdiction is exclusive, including. . . . (I) any improvement undertaken by or for the benefit of Amtrak as part of, or in furtherance of, the Northeast Corridor Improvement Project (including without limitation maintenance, service, inspection or similar facilities acquired, constructed or used for high speed trainsets) or chapter 241, 243, or 247 of this title or (ii) any land (and right, title or interest created with respect thereto) on which such improvement is located and adjoining, surrounding or any related land. . . .

49 U.S.C. § 24902(j).  The Township asserts that the statute applies only to <u>improvements</u> undertaken in connection with the NCIP, and therefore, it has no application to the present case.  In contrast, Amtrak asserts that its rail lines in Caln Township are part of the NCIP, and that the language of 49 U.S.C. § 24902(j) exempts it from local laws in connection with operations on its real property to the same extent that the federal government would be exempt if performing the operations within a federal enclave.  <u>See</u> <u>id.</u>

Amtrak has presented evidence that routes to Harrisburg, Pennsylvania, which would include the route in Caln Township at issue here, are part of the NCIP.[2]  Given that the statute was written for the benefit of the rail systems comprising the NCIP, including those in Caln Township, it follows logically that all sections of the statute, including the exemptions found in subsection (j), would apply to the route in Caln Township as well.  The Township has cited no authority to the contrary; therefore, viewing the evidence in the light most favorable to Amtrak, this Court will not dismiss this claim at this point in the proceedings.

### D.  49 U.S.C. § 24301(g)

---

[2] The provision defining the NCIP was repealed by the 1997 Amendments to the statute and has never been redefined.  Prior to the 1997 Amendments, the statute stated:

> (a) Northeast Corridor improvement plan.- To the extent of amounts appropriated under Section 24909 of this title, Amtrak shall carry out a Northeast Corridor improvement program to achieve the following goals:
> . . . .
>> (2) improve facilities, under route criteria approved by Congress, on routes to Harrisburg, Pennsylvania, Albany, New York, and Atlantic City, New Jersey, from the Northeast Corridor main line, and to Boston, Massachusetts, New Haven, Connecticut, from Springfield, Massachusetts, to make those facilities more compatible with improved high-speed transportation provided on the Northeast Corridor main line.

Amtrak Reform and Accountability Act of 1997, Pub. L. 105-304, § 405(b)(1)(A).

Amtrak contends that local regulations attempting to regulate the manner in which it maintains its rights-of-way relate to its "routes" and are preempted by 49 U.S.C. § 24301(g), which states: "A State or other law related to rates, routes, or service does not apply to Amtrak in connection with rail passenger transportation." 49 U.S.C. § 24301(g). The Township argues that Amtrak's claim pursuant to 49 U.S.C. § 24301(g) must be dismissed because the "weed control ordinance with its imposition of fines and court costs does not concern Amtrak's rates, routes or services or concern rail passenger transportation," and therefore, the ordinance is not preempted. (Defs.' Mot. to Dismiss 18.)

Amtrak cites Rowe v. N.H. Motor Transp. Ass'n, a recent Supreme Court case addressing preemption under the Federal Aviation Administration Authorization Act ("FAAAA"), in support of its argument that 49 U.S.C. § 24301(g) preempts the Township's ordinance. 128 S. Ct. 989 (2008). In deciding when a state or local law "related to" rates, routes, or service, the Rowe Court, relying heavily on Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992), found that a state law "related to" a carrier's rates, routes, or services, and was thereby preempted, if the law had a "connection with or reference to" a carrier's rates, routes, or services. Rowe, 128 S. Ct. at 995 (quoting Morales, 504 U.S. at 384). The Court also found that a state law could be preempted even if its effect on rates, routes, or services was only indirect. Id. Additionally, in analyzing preemption under various different Acts, the Rowe Court determined that when "judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well." Id. at 994 (quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006); see also Wheeling, 141 F.3d at 95. Thus, as the language of the

two statutes mirror each other, Rowe remains relevant to the case at hand.[3]

In light of the holdings in Rowe, we will not dismiss Amtrak's claim pursuant to 49 U.S.C. § 24301(g) at this point in the proceedings. As noted above, Rowe determined that 49 U.S.C. § 24301(g) may preempt a state or local law even where the local law has only an indirect effect on rates, routes, or service. 128 S. Ct. at 995. Amtrak alleges that the Township is attempting to regulate Amtrak's "routes" through its weed ordinance. If Amtrak can establish that the enforcement of the Township's ordinance affects its "routes," even indirectly, then the ordinance may be preempted under this provision. Furthermore, in light of the fact that the Rowe Court did not specify where the line should be drawn between a state law that affects rates, routes, or service indirectly and one with an effect that is "tenuous" or "remote," we find that this claim should not be dismissed at this early stage of the proceedings. Id. at 995.

### E.  49 C.F.R. § 213.37

Amtrak argues that the Township's weed control ordinance is preempted by 49 C.F.R. § 213.37, which regulates vegetation "on or immediately adjacent to" a railroad's roadbed. Specifically, the regulation reads:

---

[3] **(c) Motor carriers of property.--**

    **(1) General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

> Vegetation on railroad property which is on or immediately adjacent to roadbed shall be controlled so that it does not--
>
> > (a) Become a fire hazard to track-carrying structures;
> >
> > (b) Obstruct visibility of railroad signs and signals:
> > > (1) Along the right-of-way, and
> > >
> > > (2) At highway-rail crossings; (This paragraph (b)(2) is applicable September 21, 1999.)
> >
> > (c) Interfere with railroad employees performing normal trackside duties;
> >
> > (d) Prevent proper functioning of signal and communication lines; or
> >
> > (e) Prevent railroad employees from visually inspecting moving equipment from their normal duty stations.

49 C.F.R. § 213.37. While the Third Circuit has not ruled on the extent to which § 213.37 preempts state law, other circuits have determined that § 213.37 preempts only those local laws seeking to regulate vegetation "on or immediately adjacent to" the roadbed. For example, the Eleventh Circuit has stated: "Because the Secretary [of Transportation] has chosen to regulate vegetation, Congress explicitly has preempted all state regulation in this area." Easterwood v. CSX Transp., Inc., 933 F.2d 1548, 1554 (11th Cir. 1991), aff'd, 507 U.S. 658 (1993). However, because these regulations apply only to vegetation "on or immediately adjacent to" the roadbed, states are free to regulate vegetation beyond the area contemplated by 49 C.F.R. § 213.37. Id. at 1548 (adopting Mo. Pac. Ry. Co. v. R.R. Comm. of Tex., 833 F.2d 570 (5th Cir. 1987)); see also Fokides v. Norfolk S. Corp., No. 03-172, 2006 WL 2848104, at *7 (Del. Super. Ct. Oct. 5, 2006).

The applicability of 49 C.F.R. § 213.37, therefore, turns on whether or not the Township's ordinance seeks to regulate vegetation "on or immediately adjacent to" Amtrak's roadbed. The Township asserts that it issued citations for areas of Amtrak's property along the

outer portion of the Thorndale train station and not for areas on or immediately adjacent to the roadbed. (Defs.' Mot. to Dismiss 19.) According to the Township, it issued these citations because "the vegetation had become so overgrown that Township residents were at times forced to walk out into a busy state highway." (Id.) Conversely, Amtrak points to the specific addresses listed on the citations and asserts that none of the cited locations relate to the location of the Thorndale train station or have pedestrian walkways, and that the cited locations are, in fact, areas adjacent to the roadbed. (Pls.' Br. in Opp. 18.)

Without additional information concerning the exact location at issue, it is impossible to ascertain whether the federal statute and local ordinance attempt to regulate the same space. See Fokides, 2006 WL 2848104, at *7 (finding state provision not preempted to the extent it covered vegetation beyond the area covered by 49 C.F.R. § 213.37). If it turns out that the Township seeks to regulate vegetation in areas adjacent to the roadbed, then the Township's ordinance would be preempted by 49 C.F.R. § 213.37. Nonetheless, if it turns out that the cited areas relate to land that is not adjacent to the roadbed, then the Township would remain free to regulate in that area. In light of the significant question of fact created by the parties' disagreement concerning the location of the cited property, and the fact that there has been no agreement between the parties as to what constitutes the "roadbed," we find that, viewing the evidence in the light most favorable to Amtrak, Amtrak's allegations are sufficient to survive the Motion to Dismiss.

### F.  Injunctive Relief

Finally, the Township moves to dismiss Amtrak's request for injunctive relief on the

basis that Amtrak has failed to set forth a claim for a preliminary or permanent injunction. In deciding whether Amtrak is entitled to preliminary injunctive relief, this Court must consider four factors: (1) whether Amtrak has demonstrated a reasonable probability of success on the merits; (2) whether Amtrak will suffer irreparable harm should the Court deny relief; (3) whether granting preliminary relief will result in even greater harm to the Township; and (4) whether granting the requested relief behooves the public interest. Septa, 210 F. Supp. 2d at 722 (citing ACLU v. Reno, 217 F.3d 162, 172 (3d Cir. 2000); Allegheny Energy, Inc. v. DOE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)).

A review of Amtrak's Complaint demonstrates that it has sufficiently alleged each of the elements necessary for a claim of injunctive relief. First, with respect to Amtrak's probability of success on the merits, as noted above, Amtrak has amply alleged facts that, if proven, would entitle it to injunctive relief from enforcement of the Township's ordinance. Secondly, Amtrak has alleged that it was subject to fines associated with the Township's citations, that it will continue to be subject to citations for violation of the Township's ordinance in violation of federal law, and that the Township will continue to subject its employees to threats of fines and criminal prosecution if an injunction is not entered by this Court. These allegations are sufficient to establish the element of irreparable harm. See Septa, 210 F. Supp. 2d at 726. Third, granting preliminary relief will not result in any greater harm to the Township than it would to Amtrak. If an injunction is entered in favor of Amtrak, then the Township will have the responsibility of tending to the weeds. Should we decline to issue injunctive relief, then Amtrak would be responsible for the weed maintenance, or risk being cited for violation of the Township weed control ordinance. Under either circumstance, the burden on both parties is essentially the same

– the responsibility for maintaining the weeds.  Lastly, with regard to whether granting injunctive relief is in the public interest, if it is ultimately determined that the Township's ordinance violates any of the provisions of the Rail Passenger Service Act or 49 C.F.R. § 213.37, then the public interest would served by enjoining the enforcement of the ordinance against Amtrak, as enforcement of the ordinance would violate federal law.  As noted in Septa, Congress has granted Amtrak a statutory exemption in light of the financial hardship in which Amtrak found itself due to the payment of taxes and other costs to state and local governments.  210 F. Supp. 2d at 727-28.  Congress determined that state and local taxes levied against Amtrak were resulting in a windfall to the states, and therefore, Congress decided that, in return for the use of the rail services paid for with federal funds, states would be expected to fund some services for which Amtrak may otherwise be responsible.  Id. at 728.  Thus, to the extent that the ordinance is found to contravene the underlying purpose of the statute, it would be in the public interest to enjoin such activity.

     Furthermore, to the extent that Amtrak requests relief in the form of a permanent injunction, this claim also survives the Motion to Dismiss.  A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Ebay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).  For the reasons set forth above, Amtrak has sufficiently alleged elements one, three, and four.  Additionally, we find that its allegations are also sufficient to establish that money damages are insufficient to compensate for

the injury.  See Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).  Amtrak has alleged that it will continue to be subject to an ordinance that is preempted by federal statute, and that its employees will continue to be subjected to threats of fines and criminal prosecution for violation of an ordinance that has been improperly applied to Amtrak.  As money damages would not ensure that the Township would not attempt to enforce the ordinance against Amtrak in the future, these allegations are sufficient to establish the need for equitable relief.  See id.; Septa, 210 F. Supp. 2d at 726-27 (finding no adequate remedy at law under similar facts).  As such, Amtrak's claim for injunctive relief remains intact.

    An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, et al., : : : Plaintiffs, : : v. : : CALN TOWNSHIP, et al., : : Defendants. : | CIVIL ACTION No. 08-5398 |

## ORDER

**AND NOW**, this 12th day of March, 2009, in consideration of the Motion to Dismiss Plaintiffs' Complaint and Deny Plaintiffs' Motion for Declaratory and Injunctive Relief Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Caln Township, et al., (Doc. No. 14), and the response thereto, it is hereby **ORDERED** that the Motion to Dismiss is **DENIED.**

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE