# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, et al., | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | No. 08-5398 |
| CALN TOWNSHIP, et al., | : : : | |
| Defendants. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                              **JANUARY 8, 2010**

      Presently before the Court is the Motion for Declaratory Judgment and Injunctive Relief filed by Plaintiffs National Railroad Passenger Corporation ("Amtrak") and Daniel Karczeski ("Karczeski") (collectively, "Plaintiffs"). At Plaintiffs' request, the Court will construe the Motion as one for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Motion is granted.

**I.**      **FACTS**

      Amtrak was established by the Rail Passenger Service Act ("RPSA"), 49 U.S.C. § 24101, in 1971. Karczeski is an Amtrak employee in the role of Deputy Division Engineer for the Mid-Atlantic Division. Defendant Caln Township (the "Township") is a township organized and existing under the laws of the Commonwealth of Pennsylvania, located at 253 Municipal Drive, Thorndale, Pennsylvania. The Township's Director of Code Enforcement, Andrew Reczek ("Reczek"), and Township Commissioners Jill Kelly Hammond, Jim Mayrides, Jim Kruse, Joshua Young, and William Chambers, are also named as Defendants in this action (collectively,

"Defendants").

A portion of Amtrak's railway runs through Caln Township – as part of the Keystone Route and Northeast Corridor. On August 13, 2008, the Township issued two citations to Karczeski because of Amtrak's alleged failure to comply with Township Ordinance 2005-11 (amending Ch. 120-2 of the Township Code),[1] a Township weed control ordinance requiring that all weed or plant growth be maintained at eight inches or less (the "Ordinance").[2] On August 27, 2008, the Township again cited Karczeski for a second alleged violation of the Ordinance on another portion of Amtrak's property. Notably, the properties at issue are grassy areas adjacent to the railroad roadbed near the Thorndale train station in the Township.[3]

As a result of the citations, a Pennsylvania magistrate district judge issued summonses. Karczeski pled not guilty to the citations and posted collateral in the amount of $352.00. Subsequently, the magistrate judge scheduled a hearing on the matter for September 30, 2008.

On September 12, 2008, counsel for Amtrak sent a letter to the Township asserting that Amtrak was federally exempt from the Ordinance. The letter also referenced the citations the Township had issued against Amtrak two years prior, in 2006, and requested that the Township

---

[1] The Ordinance adopts § 302.4 of the International Property Maintenance Code.

[2] In 2006, the Township also attempted to enforce local property ordinances against Amtrak based upon alleged violations regarding drainage, weed growth, and other issues. Notices of violations and summonses were issued. In addition, an arrest warrant was issued against Amtrak's Vice President for Government Affairs, Joseph McHugh. The Township eventually withdrew the notices of violation and arrest warrant before any litigation commenced.

[3] Karczeski testified that Amtrak trims the vegetation in the Township – a two to three hour process in each location – two or three times per year with a sickle bar tractor. (Defs.' Br. in Supp. of Mot. to Dismiss, Ex. A at 9-11, 22, 28.) However, the cutting was clearly not sufficient to satisfy the Ordinance's requirements.

withdraw the current citations, as it had done in 2006.

On September 24, 2008, Amtrak's Deputy General Counsel and Solicitor General contacted the Township's Solicitor, requesting that the Township take necessary steps to have the citations against Karczeski withdrawn. However, before the citations were withdrawn, the magistrate judge held a hearing on the matter, as scheduled, on September 30, 2008, wherein Karczeski was not present. As a result, on October 1, 2008, the magistrate judge entered an Order Imposing Sentence of a fine of $12.32, and on October 2, 2008, issued a Notice of Impending Arrest to Karczeski, directing that if Karczeski did not either appear before the court or remit the $12.32 to the Township, a warrant would be issued for his arrest. A bench warrant was ultimately issued for Karczecki's arrest, and Karczecki received notice of it on November 7, 2008.

On November 10, 2008, Amtrak's counsel contacted the Township's counsel, demanding that the Township withdraw the citations and the bench warrant for Karczecki's arrest on the basis that federal law did not require Amtrak to comply with the Ordinance. On November 11, 2008, the Township's counsel responded to Amtrak's counsel, stating that the Township did not have the authority to withdraw the arrest warrant issued for Karczecki, but offered to "informally look into" the reason for the warrant. The Township's counsel later agreed, via email, to withdraw the citations and to ask the magistrate judge to rescind the arrest warrant.

According to the Township, it further informed Amtrak's counsel that it would be unable to proceed with withdrawal of the charges until November 14, 2008, due to the unavailability of the magistrate judge. On November 14, 2008, the Township withdrew the citations and asked the magistrate judge to withdraw the arrest warrant, to which he agreed. A Notice of Withdrawal

3

of Charges was issued on November 14, 2008. Plaintiffs filed their Complaint in this Court on that same day, alleging that the Ordinance is preempted by several provisions of the RPSA, 49 U.S.C. § 24101, and 49 C.F.R. § 213.37.[4]

In connection with their Complaint, on November 14, 2008, Plaintiffs also filed the instant Motion for declaratory and injunctive relief. On January 16, 2009, Defendants moved to dismiss the Complaint. On March 12, 2009, the Court denied Defendants' Motion to Dismiss. Subsequently, on July 31, 2009, the Court signed a Scheduling Order setting discovery deadlines and mandating that each party submit supplemental briefs related to the pending Motion. The parties have submitted their respective briefs.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable

---

[4] Plaintiffs have stated that they are no longer pursuing a preemption claim based upon 49 C.F.R. § 213.37 for purposes of the instant Motion.

jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

### III. DISCUSSION

Plaintiffs claim that they are entitled to summary judgment because, as a matter of law, three federal statutory provisions – 49 U.S.C. § 24301(l), 49 U.S.C. § 24902(j), and 49 U.S.C. § 24301(g) – preempt enforcement of the Ordinance against Amtrak. Plaintiffs also argue that summary judgment is appropriate at this stage of the litigation because there are no genuine issues of fact surrounding application of the statutory provisions. We agree and will now address each of the relevant issues.

#### A. 49 U.S.C. § 24301(g)

Plaintiffs contend that the Ordinance does not apply to Amtrak pursuant to 49 U.S.C. §

5

24301(g), which states: "A State or other law ***related to rates, routes, or service does not apply to Amtrak*** in connection with rail passenger transportation." 49 U.S.C. § 24301(g) (emphasis added). Specifically, Plaintiffs argue that pursuant to the "Supreme Court's consistently broad interpretation and application of virtually identical preemption language in other federal statutes, § 24301(g) preempts the Township's vegetation control ordinance because it is 'related to' an Amtrak intercity rail passenger route – specifically, Amtrak's Keystone Route." (Pls.' Supp. Br. in Supp. of Mot. for Relief at 17.) In contrast, Defendants contend that "[the Ordinance] with its imposition of fines and court costs does not concern Amtrak's rates, routes or services or concern rail passenger transportation." (Defs.' Br. in Supp. of Mot. to Dismiss at 18.)

Plaintiffs cite Rowe v. New Hampshire Motor Transport Association, a 2008 Supreme Court case addressing similar language under the Federal Aviation Administration Authorization Act ("FAAAA"), in support of its argument that the Ordinance does not apply to Amtrak based on § 24301(g). 128 S. Ct. 989 (2008).[5] In deciding when a state or local law is "related to" rates, routes, or service, the Rowe Court, relying heavily on Morales v. Trans World Airlines, Inc., 504

---

[5] The FAAAA provision at issue in Rowe states:

**(1) General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law ***related to a price, route, or service of any motor carrier*** (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added).

U.S. 374 (1992),[6] found that a state law was "related to" a carrier's rates, routes, or services, and was thereby preempted, if the law had a "'connection with or reference to'" a carrier's rates, routes, or services. Rowe, 128 S. Ct. at 995 (citing Morales, 504 U.S. at 384). Moreover, relying on Morales, the Court found that a state law could be preempted even if its effect on rates, routes, or services was "only indirect." Id. Notably, in both Rowe and Morales, the Supreme Court stated that there may be cases where federal law does not preempt because the impact of the state law is "too tenuous, remote, or peripheral" to have "pre-emptive effect." Rowe, 128 S. Ct. at 995; Morales, 504 U.S. at 390.

In light of the broad interpretation of similar preemption statutes in Rowe and Morales, we find that the Ordinance should not be enforced against Amtrak, pursuant to § 24301(g), because it is "related to" Amtrak's "routes." Here, the Ordinance has a "connection with" Amtrak's Keystone Route because it would have an adverse effect on Amtrak's resources for that route if it was enforced. The impact would not be "tenuous, remote, or peripheral." Instead, Amtrak would be burdened with using its limited workforce and funds on continuously maintaining the property in Caln Township to ensure it is "free from weed or plant growth in excess of [eight inches]." This drain on resources would have a significant impact on other operations on the Keystone Route.

Further, if the Ordinance was permitted to be enforced against Amtrak, it would open the door to similar vegetation ordinances, with varying vegetation height limits, being enforced

---

[6] In Morales, the Supreme Court analyzed similar language in an Airline Deregulation Act provision which preempted states from "enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of law **relating to rates, routes, or services of any air carrier** . . . ." 49 U.S.C. App. § 1305(a)(1) (emphasis added) (superseded by 49 U.S.C. § 41713(b)(1)); Morales, 504 U.S. at 383.

against Amtrak along the entire Keystone Route[7] and other routes. This would be unduly burdensome and defeat Congress's mission that Amtrak "provide efficient and effective intercity passenger rail mobility" in a manner that "maximize[s] the use of [Amtrak's] resources, including the most cost-effective use of employees, facilities, and real property." 49 U.S.C. §§ 24101(b) and (c)(10). The Ordinance is "connected with" Amtrak's routes because its enforcement would, at the very least, have an indirect effect on the Keystone Route. As a result, the Ordinance is preempted by § 24301(g) and should not be enforced against Amtrak.

B.      49 U.S.C. § 24902(j)

Plaintiffs also argue that 49 U.S.C. § 24902(j), a provision in the statutory chapter regarding the Northeast Corridor Improvement Program ("NCIP"), shields Amtrak from the Township's Ordinance. The statute reads:

> **(j) Applicable procedures.**--No State or local building, zoning, subdivision, or similar or related law, nor any other State or local law from which a project would be exempt if undertaken by the Federal Government or an agency thereof within a Federal enclave wherein Federal jurisdiction is exclusive . . . shall apply in connection with the construction, ownership, use, operation, financing, leasing, conveying, mortgaging or enforcing a mortgage of (I) ***any improvement undertaken by or for the benefit of Amtrak as part of, or in furtherance of, the Northeast Corridor Improvement Project*** (including without limitation maintenance, service, inspection or similar facilities acquired, constructed or used for high speed trainsets) or chapter 241, 243, or 247 of this title or (ii) ***any land*** (and right, title or interest created with respect thereto) ***on which such improvement is located and adjoining, surrounding or any related land*** . . . .

49 U.S.C. § 24902(j) (emphasis added). The Township responds that the statute applies only to

---

[7] The Keystone Route connects New York City, New York with Harrisburg, Pennsylvania, while running through a host of local jurisdictions, including Caln Township.

8

improvements undertaken in connection with the NCIP, and therefore, has no application to the present case. However, Plaintiffs assert that its rail lines in Caln Township are part of the NCIP, and that the language of § 24902(j) exempts it from local laws in connection with operations on its real property to the same extent that the federal government would be exempt if performing the operations within a federal enclave.

Plaintiffs have shown that the rail lines in Caln Township are part of the Northeast Corridor and the NCIP.[8] Id. § 24102(6). Given that the statute was written for the benefit of the rail systems comprising the NCIP, including those in Caln Township, it follows that all sections of the statute, including the exemptions found in subsection (j), would apply to the route in Caln Township as well. The statutory provision broadly states that "any State or local law from which a project would be exempt if undertaken by the Federal Government . . . within a Federal enclave wherein Federal jurisdiction is exclusive" should not be applied in connection with the "use" or "operation" of "any improvement undertaken by or for the benefit of Amtrak, as part of, or in

---

[8] The provision defining the NCIP was repealed by the 1997 Amendments to the statute and has never been redefined. Prior to the 1997 Amendments, the statute stated:

> (a) Northeast Corridor improvement plan.- To the extent of amounts appropriated under Section 24909 of this title, Amtrak shall carry out a Northeast Corridor improvement program to achieve the following goals: . . . .
>
> (2) improve facilities, under route criteria approved by Congress, on routes to Harrisburg, Pennsylvania, Albany, New York, and Atlantic City, New Jersey, from the Northeast Corridor main line, and to Boston, Massachusetts, New Haven, Connecticut, from Springfield, Massachusetts, to make those facilities more compatible with improved high-speed transportation provided on the Northeast Corridor main line.

Amtrak Reform and Accountability Act of 1997, Pub. L. 105-304, § 405(b)(1)(A).

9

furtherance of, the Northeast Corridor Improvement Project" or "any land . . . on which [a Northeast Corridor improvement] is located and adjoining, surrounding or any related land." Id. § 24902(j).

As an initial matter, the Constitution's Supremacy Clause and Plenary Powers Clause provide that "Congress [has] exclusive legislative authority over federal enclaves." Hancock v. Train, 426 U.S. 167, 178 (1976). Moreover, as courts have explained, "under the Supremacy Clause of the federal constitution, a federal enclave may not be regulated by state law absent explicit authorization by Congress." Gettysburg Battlefield Pres. Ass'n v. Gettysburg Coll., 799 F. Supp. 1571, 1581 n.7 (M.D. Pa. 1992) (citing numerous cases for proposition). In this case, Congress provides Amtrak with an exemption from various state or local laws to the same extent as the federal government within a federal enclave where federal jurisdiction is exclusive. As Plaintiffs state, and Defendants do not deny, "Congress enacted this federal enclave provision in 1996, nine years before the Township's adoption of [the Ordinance] . . . . Congress has not subsequently enacted any legislation that would authorize the Township to impose the ordinance on Amtrak's property if it were a federal enclave." (Pls' Supp. Br. in Supp. of Mot. for Relief at 16.) As a result, if the Ordinance falls within the category of state or local laws exempted by § 24902(j), it is preempted by federal law.

The Ordinance clearly falls within the ambit of § 24902(j). Specifically, the Ordinance seeks to regulate Amtrak's "use" or "operation" of "land . . . on which [Northeast Corridor improvements] are located and adjoining, surrounding or any related land." 49 U.S.C. § 24902(j). The provision broadly covers not only land within the railroad roadbed, or immediately adjacent property, but also covers "surrounding" or "related" land. Thus, the

properties at issue in this litigation are within the scope of the provision. § 24902(j) exempts Amtrak's NCIP property from compliance with the Ordinance.

C.     49 U.S.C. § 24301(l)

Finally, Amtrak asserts that it is exempt, pursuant to 49 U.S.C. § 24301(l), from the imposition of fines and costs associated with the Ordinance. This statutory provision states:

> **(l) Exemption from taxes levied after September 30, 1981.--(1) In general.--** Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, *are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak*, a rail carrier subsidiary of Amtrak, or on persons traveling in intercity rail passenger transportation or on mail or express transportation provided by Amtrak or such a subsidiary, or on the carriage of such persons, mail, or express, or on the sale of any such transportation, or on the gross receipts derived therefrom after September 30, 1981. In the case of a tax or fee that Amtrak was required to pay as of September 10, 1982, Amtrak is not exempt from such tax or fee if it was assessed before April 1, 1997.

49 U.S.C. § 24301(l) (emphasis added). Plaintiffs assert that Amtrak is exempt from paying the fines and costs associated with the Ordinance because they are "tax[es]" or "other charge[s]" from which Amtrak is exempt under the statute. In response, Defendants contend that the statute does not apply to the fines and costs because they were imposed for violations of the Ordinance and are not related to the "sale of any such transportation" or "the gross receipts derived therefrom" which, they assert, is necessary for them to qualify as "tax[es]," "fee[s]," or "other charge[s]" under the statute.

However, as Plaintiffs correctly argue, the exemption is not limited to charges for "sale[s]" of transportation or from "gross receipts." Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 665 F. Supp. 402 (E.D. Pa. 1987), aff'd, 848 F.2d 436 (3d Cir. 1988) ( "Amtrak I" and "Amtrak II"). In Amtrak II, in deciding whether Amtrak's tax exemption extended to a special

assessment by a state agency for the construction of railroad grade crossing improvements, the Third Circuit determined that the tax exemption granted to Amtrak under federal law prohibited the Pennsylvania Utility Commission ("PUC") from shifting responsibility to Amtrak to pay costs associated with the replacement of a bridge, and adjoining pedestrian walkway, crossing Amtrak's right-of-way. 848 F.2d at 440 (finding statutory exemption should be interpreted broadly and extended to assessments for local improvements). Subsequently, both this Court and the Third Circuit have restated the broad scope of the statutory exemption. See Se. Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n, 210 F. Supp. 2d 689, 728-29 (E.D. Pa. 2002), aff'd, Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 342 F.3d 242 (3d Cir. 2003) ( "Septa I" and "Septa II"). The Court agrees with Plaintiffs that these cases demonstrate that the exemption is not limited to "sale[s]" or "gross receipts."

In addition, the Defendants contend that the fines and costs imposed pursuant to the Ordinance simply fail to qualify for an exemption as a "tax," "fee," or "other charge" under § 24301(l). Defendants argue that imposing a fee upon Amtrak for the reconstruction and maintenance of township roadways and bridges is not the same as imposing fines or costs for failure to comply with a local weed ordinance. The breadth of the statutory language and the liberal interpretation of that language by Third Circuit courts (including in the Amtrak and Septa cases) demonstrate that Defendants' argument fails.

Congress enacted the RPSA in 1971, and established Amtrak as a private corporation, in an effort to revive the failing intercity passenger rail lines. Amtrak II, 848 F.2d at 438. While Amtrak is not "an agency or establishment" of the federal government, it is "authorized by the government to provide intercity rail passenger service." Nat'l R.R. Passenger Corp. v. Atchison,

Topeka & Santa Fe Ry. Co., 470 U.S. 451, 454-55 (1985). As the Third Circuit has explained, "despite federal subsidies, Congress recognized that Amtrak suffered losses in its first decade, and its financial situation was bleak." Septa II, 342 F.3d at 247. As a result, in 1979, Congress directed the Secretary of Transportation to study Amtrak's liability for payment of taxes to state and local governments. Amtrak II, 848 F.2d at 438. The Secretary of Transportation found that "'State and local taxes on a primarily Federal investment are inappropriate.'" Id. (quoting S. Rep. No. 253, 97th Cong., 1st Sess. 103 (1981)).

The Senate Appropriations Committee noted that "'such taxation serves to erode the revenue-to-cost ratios which impact on whether States and localities continue to receive the benefits of Amtrak service.'" Id. (citation omitted). In addition, the Committee disapproved of a system where federal subsidies were used to provide tax windfalls to states and localities. Id. As a result of these findings, Congress deferred Amtrak's payment of any state or local taxes for one year. Id. Congress revisted the issue the following year and "'converted Amtrak's temporary exemption into a continuing one.'" Id. (citation omitted). A Senate Committee Report noted: "'At a time when local jurisdictions are demanding that nationwide rail passenger service be maintained, it seems reasonable to provide for a 'user contribution' whereby those areas receiving the service in return contribute to Amtrak's continued existence through tax relief.'" Septa II, 342 F.3d at 247-48 (citing S. Rep. No. 516, 97th Cong., 2d Sess. 170 (1982)). The statutory exemption from state and local taxes and fees was eventually codified in 45 U.S.C. § 546(b), which has subsequently been recodified as 49 U.S.C. § 24301(l)(1).[9] In 1997, the

---

[9] As originally enacted, the provision "exempted [Amtrak] from taxes or other fees imposed by any State [or] political subdivision." 45 U.S.C. § 546b (1982) (superseded by 49 U.S.C. § 24301(l)).

exemption was expanded to not only include taxes or fees imposed by a state, political subdivision or local taxing authority, but also to cover a "head charge" or "other charge" imposed by such entities. Id. at 248 n.2.

Courts have repeatedly discussed the broad application of the statutory exemption. See, e.g., Amtrak I, 665 F. Supp. at 411; Amtrak II., 848 F.2d at 440; Septa I, 210 F. Supp. 2d at 697; Septa II, 342 F.3d at 248-49; Wheeling & Lake Erie Ry. Co. v. Pa. Pub. Util. Comm'n, 141 F.3d 88, 95-97 (3d Cir. 1998). As the court explained in Amtrak I:

> The extensive federal involvement i[n] Amtrak's management, finances and operations make it apparent that the legislative exemptions should be ***liberally construed*** to effectuate its goals. . . . [The exemption] is an attempt is to guarantee Amtrak's fiscal integrity, and indeed its survival. The federal government has pursued governmental functions and policies through Amtrak. It would be inappropriate to undermine those goals through too stingy [a] construction of the exemption . . . .

665 F. Supp. at 411 (emphasis added); see also Amtrak II, 848 F.2d at 441 ("As a consequence of Amtrak's federal ties, we must apply the rule compelling a liberal construction of a governmental exemption and we will interpret the statutory language in a manner consistent with federal immunity from local taxes."). While there is no case law that directly addresses whether the § 24301(l) exemption encompasses fines and costs under a weed ordinance, the Court will give the provision a broad interpretation that is consistent with the statute's text, legislative history, and well-established case law.

We will now examine whether the fines and costs imposed pursuant to the Ordinance qualify as "tax[es]" or "other charge[s]" under the § 24301(l) exemption. In Amtrak I, the court found no basis for distinguishing between a general tax and a special assessment based on the definition of a "tax" – "'a usually pecuniary charge imposed by legislature or other public

14

authority for public purposes; a forced contribution of wealth to meet the public needs of a government.'" 665 F. Supp. at 410 (quoting Webster's Third International Dictionary (1971)). As the court further explained:

> The common sense understanding of taxation to include ***any involuntary exaction to support a governmental entity or purpose is consistent with the intent of Congress expressed in the statute and the legislative record***. . . . Congress sought to conserve the money it appropriated to Amtrak, and to restrict its use to Amtrak operations. It explicitly sought to prevent the diversion of the funds appropriated, to those states and localities for benefit of which Amtrak receives subsidies.

Id. at 410 (emphasis added). Here, the fines and costs under the Ordinance also qualify as "involuntary exaction[s]" that would be used to support Caln Township and/or local purposes. As the Third Circuit has noted, "[it] would be manifestly inconsistent [with the statutory design and intent] to make Amtrak pay for related local improvements in the many instances where the states could, and would, impose them." Amtrak II, 848 F.2d at 440. Based on a liberal interpretation of the exemption, the Court finds that the fines and costs associated with the Ordinance are analogous to "tax[es]" under § 24301(l).

At a minimum, the fines and costs under the Ordinance fall within the realm of "other charge[s]" under the exemption. As previously mentioned, the exemption provision was expanded, pursuant to the Amtrak Reform and Accountability Act of 1997, to include a "head charge" or "other charge." Courts in this district have recognized that the "enactment of the Amtrak Reform and Accountability Act of 1997 reflects Congress's preference for a broad interpretation of Amtrak's exemption." Nat'l R.R. Passenger Corp., v. Pa. Pub. Util. Comm'n, No. 86-5357, 1998 WL 103377, at *1 (E.D. Pa. Feb. 23, 1998). The statutory term "other charge" is clearly broad enough to encompass fines or costs associated with enforcement of the Ordinance.

15

In sum, whether the fines or costs are considered "tax[es]" or "other charge[s]," they are covered by the § 24301(l) exemption. The imposition of the fines or costs against Amtrak would result in the involuntary diversion of federally appropriated funds from Amtrak to Caln Township. These are the types of impositions from which Congress sought to exempt Amtrak under the wide-ranging statutory provision in order to guarantee Amtrak's fiscal integrity and avoid windfalls to states and localities. As a result, the Township is barred from imposing any fines, costs, or other monetary penalties under the Ordinance on Amtrak, pursuant to the § 24301(l) exemption.[10]

### D. Injunctive and Declaratory Relief

Plaintiffs request that we issue a permanent injunction enjoining the Township from attempting to enforce the Ordinance against Amtrak and its personnel. In order to determine whether to grant a permanent injunction,[11] the Court must consider whether: "'(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant[s]; and (4) the injunction would be in the public interest.'"

---

[10] This Memorandum and Order does not foreclose any party or parties from bringing a public nuisance action against Amtrak if the state of the weeds, or other vegetation on Amtrak's property, creates "'an unreasonable interference with a right common to the general public.'" Ricchiuti v. The Home Depot Inc., 412 F. Supp. 2d 456, 458 (quoting Restatement (Second) of Torts § 821(B)). Notably, "'circumstances that may sustain a holding that an interference with a public right is unreasonable include . . . whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience.'" Id. (quoting Restatement (Second) of Torts § 821(B)).

[11] 49 U.S.C. § 24301(l) specifically states that "the district courts of the United States have original jurisdiction over a civil action Amtrak brings to enforce this subsection and **may grant equitable or declaratory relief requested by Amtrak**." 49 U.S.C. § 24301(l)(2) (emphasis added).

James v. Richman, 465 F. Supp. 2d 395, 402 (M.D. Pa. 2006) (quoting Shields v. Zuccarini, 254 F.3d 476 (3d Cir. 2001)).  Notably, "[t]he standard for granting permanent injunctive relief is the same as for a preliminary injunction, except that the moving party must actually succeed on the merits instead of merely showing a likelihood of success."  Ryan Beck & Co. Inc. v. Faust, No. 03-636, 2003 WL 22047321, at *2 (W.D. Pa. Aug. 6, 2003).

      First, Plaintiffs have shown they are entitled to summary judgment in their favor in light of the relevant statutory provisions.  Thus, they have obtained actual success on the merits.  Second, Plaintiffs have sufficiently established that they would be irreparably harmed by the denial of injunctive relief.  Specifically, Plaintiffs have shown that they were subject to fines associated with the Township's citations, that they would be subject to future penalties for violations of the Township's ordinance, and that the Township could continue to subject its employees to threats of fines and criminal prosecution if an injunction is not entered by this Court.  In addition, monetary damages would be insufficient in this case.  These factors establish the element of irreparable harm.  Septa I, 210 F. Supp. 2d at 726.  Third, the Township has not demonstrated that permanent injunctive relief will result in even greater harm to them.  Finally, the public interest favors granting injunctive relief enjoining the enforcement of the Ordinance against Amtrak because its enforcement would violate federal law.

      Plaintiffs also request that we grant a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 (the Declaratory Judgment Act), that the Township is barred from enforcing the Ordinance against Amtrak or its employees.  As a threshold matter, the determination of whether declaratory relief is appropriate and should be granted is committed to the sound discretion of the trial court.  Nolu Plastics, Inc. v. Valu Eng'g,

Inc., No. 04-5149, 2005 WL 670694, at *4 (E.D. Pa. Mar. 21, 2005). "In determining the appropriateness of declaratory relief, the district court may consider several factors, including whether a declaratory judgment will resolve an uncertainty giving rise to a controversy, the convenience of the parties, the public interest, and the availability of other remedies." Id.

In this case, based on the factors above, we find that Plaintiffs' requested declaratory relief is appropriate. Declaratory relief will resolve a continuing dispute between the parties regarding the Ordinance and unequivocally clarify the relevant legal issues. In addition, a declaratory judgment is in the best interests of the parties because it will end any "uncertainty, insecurity and controversy giving rise to the proceedings." Md. Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971). Finally, the public interest is served by this type of relief because the controversy concerns the federal preemption of a local law and the ultimate destination for federal funds provided to Amtrak.[12]

For the reasons set forth above, we find that summary judgment in Plaintiffs' favor is appropriate. Further, we will grant Plaintiffs' request for injunctive and declaratory relief.

---

[12] Notably, it appears that both parties may be willing to cooperate in an effort to control any unwanted vegetation. As previously mentioned, Amtrak already trims vegetation in the Township – a two to three day process in each location – two or three times per year with a sickle bar tractor. (Defs.' Supp. Br. in Opp. to Mot. for Relief, Ex. A at 9-11, 40.) Further, at Karczeski's deposition, the Township's counsel asked Karczeski if Amtrak would be willing to allow the Township to assist with maintenance of the vegetation at the Township's expense, as it does with other municipalities and townships. (Id., Ex. A at 44-45.) Karczeski stated that this would be permissible "as long as [Amtrak] could assure [the Township] would stay at least 25 feet off the property, off the railroad bed." (Id., Ex. A at 44.) Further, based on the Township's recent brief, it appears that the Township only believes one additional cutting of the vegetation is necessary during the growing season. (Id. at 5 ("Caln Township does not believe it [will] truly be that catastrophic for a major landowner to reallocate some of its funds so that . . . cutting and trimming of vegetation on its property take place four times a growing season rather than three.").)

An appropriate Order follows.